IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Joyce Ann Wallace, | ) | Civil Action No. 8:14-cv-04395-DCN-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28 U.S.C. § 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB"). For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

**PROCEDURAL HISTORY**

On February 23, 2012, Plaintiff filed an application for DIB alleging disability beginning November 16, 2007. [R. 126–32.] Pursuant to the representative's brief, Plaintiff amended her alleged onset date to February 1, 2012. [R. 191.] However, at hearing, the representative asserted that he had made an error and had intended the amended alleged onset date to be February 1, 2011. [ R. 38.] The Administrative Law Judge ("ALJ") adopted

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

this amended onset date of February 1, 2011. [R. 20.]  Plaintiff's claim was denied initially and on reconsideration by the Social Security Administration ("the Administration"). [R. 71–74, 62–66.]  Plaintiff requested a hearing before an ALJ, and on April 17, 2013, ALJ Kelly Wilson held a video hearing on Plaintiff's claim.  [R. 34–55.]

The ALJ issued a decision on May 24, 2013, finding Plaintiff not disabled.  [R. 20–29.]  At Step 1,[2] the ALJ found Plaintiff last met the insured status requirements of the Social Security Act ("the Act") on September 30, 2011, and had not engaged in substantial gainful activity during the period from her amended alleged onset date of February 1, 2011, through her date last insured ("DLI") of September 30, 2011.  [R. 22, Findings 1 & 2.]

At Step 2, the ALJ found Plaintiff had the following severe combination of impairments: degenerative disc disease of the cervical, thoracic, and lumbar spine and high blood pressure.  [R. 22, Finding 3.]  The ALJ also noted that Plaintiff had a non-severe impairment of shortness of breath and vocal problems status post cyst removal.  [R. 23, Finding 4.]  The ALJ found nothing in the medical record to indicate residual functional limitation or that the acute symptoms related to breathing difficulties occurred prior the Plaintiff's DLI.  [*Id*.]

At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.  [R. 23, Finding 5.] The ALJ expressly considered Listing 1.04 with respect to Plaintiff's spinal impairments. [R. 23–24.]

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

2

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC")

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b). In particular, the claimant was able to lift and carry up to 20 pounds occasionally and 10 pounds frequently. She could stand or walk for approximately 6 hours of an 8-hour workday and sit for approximately 6 hours of an 8- hour workday with normal breaks.

[R. 24.]

At Step 4, the ALJ noted that, in light of her RFC, through the DLI, Plaintiff was capable of performing her past relevant work ("PRW") as a filing sorter and hauler, rowing machine operator, and spooler. [R. 28, Finding 7.] On this basis, the ALJ found Plaintiff was not under a disability, as defined in the Act, at any time from November 16, 2007[3], the alleged onset date, through September 30, 2011, the DLI. [R. 28, Finding 8.]

Plaintiff requested Appeals Council review of the ALJ's decision but the Council declined. [R. 1–6. ] Plaintiff filed this action for judicial review on November 13, 2014. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and that remand is necessary because the ALJ improperly found Plaintiff's shortness of breath was a non-severe impairment, failed to account for Plaintiff's mental and physical limitations

---

[3]The ALJ appears to have considered Plaintiff's disability from November 16, 2007, through the DLI although Plaintiff amended her onset date to February 1, 2011, and the ALJ adopted that amendment. [*See* R. 20.]

3

in the RFC, failed to perform a proper credibility analysis, and failed to make a proper Step 4 determination. [*See* Doc. 35.]

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and the ALJ properly determined that Plaintiff's shortness of breath and vocal problems were not severe, properly evaluated Plaintiff's RFC in light of the relevant record evidence, appropriately assessed Plaintiff's RFC, and properly found Plaintiff capable of PRW. [*See* Doc. 36.]

## <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the

[Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court

enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme

7

parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the

---

Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A. *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B. *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

## C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983)

---

[5]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

(stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire

12

of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

### III.     Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

V.     **Pain**

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has rejected

15

a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).   The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.   Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

### Step 2 Impairment Determination

Plaintiff argues that the ALJ erred in failing to find Plaintiff's shortness of breath to be severe.  [Doc. 35 at 9.]  Plaintiff contends her shortness of breath has more than a minimal effect on her ability to do basic work-related activities and should have been found to be severe. [*Id*. at 11.]  The Commissioner contends, however, that the ALJ correctly noted Plaintiff's symptoms did not occur until more than one year after her DLI and that

17

there was nothing in the record to indicate residual functional limitations or that the acute symptoms occurred prior to Plaintiff's DLI. [Doc. 36 at 4–5.] The Court agrees with the Commissioner.

### ALJ's Determination

In considering Plaintiff's impairments, the ALJ explained as follows:

> I duly considered the claimant's allegations as to her shortness of breath and vocal problems status post cyst removal. However, the claimant testified, and the medical evidence corroborates that these symptoms did not occur until after her neck surgery for cyst removal, which was in December 2012, more than a year after her date last insured of September 30, 2011 (Exhibit 5F; Exhibit 6F; Exhibit 7F, p. 25; Exhibit 9F).
>
> An x-ray of the claimant's chest performed on July 14, 2010 was negative, revealing the claimant's heart size and pulmonary vessels were within normal limits, the hilar and mediastinal contours were normal, and her lungs were clear (Exhibit 12F, p. 24). As to the allegation of breathing difficulties due to recurrent bronchitis, the evidence indicates that these symptoms were acute. There is nothing in the medical record to indicate residual functional limitation or that these acute symptoms occurred prior the claimant's date last insured (Exhibit 1F, p. 3).
>
> In order for an impairment to be considered severe so as to be relevant to a finding of disability, it must meet the criteria of a severe impairment prior to the claimant's date last insured. While I do not doubt the existence of these impairments and acknowledge medical evidence pertaining to same, unfortunately, there is no evidence to support that these symptoms caused any substantial functional limitation between the claimant's amended alleged onset date of February 1, 2011 and prior to the claimant's date last insured, September 30, 2011. Consequently, these impairments are determined to be non-severe.

[R. 23.]

### Discussion

A claimant in a Social Security disability claim has the duty to furnish all relevant medical evidence and to carry the burden of proving that she is disabled. 20 C.F.R. § 404.1512(a). For a claimant to establish eligibility for DIB, she must demonstrate two essential elements: (1) a disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months," 42 U.S.C. § 423(d) (1)(A); and (2) a disability at the time the claimant has disability insurance status, *Id*. § 423(a)(1)(A); 20 C.F.R. § 404.131(a). Thus, a claimant must establish the presence of a disability prior to the last day of her disability insurance status. *Johnson v. Barnhart*, 434 F.3d 650, 655–56 (4th Cir.2005).

"[S]evere" is a term of art, which means the impairment at issue "significantly limits [the Plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Social Security Ruling ("SSR") 96–8p contemplates that a "severe" impairment "has more than a minimal effect on the ability to do basic work activities." SSR 96–8p. Plaintiff bears the burden of proving an impairment is "severe." *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987).

Upon review of the record and the arguments of the parties, the Court finds that the ALJ's finding that Plaintiff's shortness of breath and vocal problems status post cyst removal are not a "severe" impairment is supported by substantial evidence. The ALJ considered all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements during the relevant time period and determined that Plaintiff's allegations due to recurrent bronchitis were acute prior to the DLI,

19

but there was no evidence that these symptoms caused any substantial functional limitation between Plaintiff's amended onset date and her DLI. [R. 23.] The ALJ also noted that on December 6, 2012, Plaintiff presented to Self Regional Health for an evaluation of a mediastinal mass. [R. 25.] Plaintiff had surgery to remove a large cyst from her lung and several lymph nodes. [Id.] After the surgery, Plaintiff developed complications including problems swallowing, worsening voice, shortness of breath, and reflux. [Id.] And, while Plaintiff testified that she cannot work because she gets short of breath and her back goes out, Plaintiff admitted that her shortness of breath and speech difficulties started after her neck surgery in December 2012. [R. 26.] Regardless of whether or not Plaintiff's impairment is actually severe, the Court notes Plaintiff does not contest the Commissioner's position that this impairment did not occur until *after* September 30, 2011, Plaintiff's DLI. Thus, the ALJ properly determined that Plaintiff's limitations resulting from her December 2012 surgery arose after her DLI and unfortunately were not relevant to her disability status as it relates to this application for benefits. [R. 27.]

Further, the Court notes that, not only does Plaintiff fail to challenge the ALJ's finding that this impairment was post DLI, Plaintiff provided no medical opinion or reasonable basis on which the Court could determine that the severity of the impairment claimed by Plaintiff related back to the relevant time period. Thus, the ALJ did not err in failing to find Plaintiff's breathing problems severe during the relevant time period, and no further fact finding by the ALJ was necessary. *See, e.g., Manning v. Colvin*, C/A No. 8:12–1478–DCN–JDA, 2014 WL 1315228, at *19 n. 8 (D.S.C. March 30, 2014) (records dated a minimum of eight months after Plaintiff's DLI and the physician opinion letter dated 28 months after the DLI, with no

specific statement that the opinion relates back to the relevant time period, is a sufficient basis to conclude no further fact finding is necessary).

Upon review, the Court finds the ALJ's decision is also sufficiently explained so as to allow the Court to track the ALJ's reasoning and be assured that all record evidence was considered and understand how the ALJ resolved conflicts in the evidence. *See McElveen v. Colvin*, C/A No. 8:12–1340–TLW–JDA, 2013 WL 4522899, at *11 (D.S.C. Aug. 26, 2013). Because the Plaintiff failed to show that her shortness of breath caused more than minimal limitations on her ability to work between February 1 and September 30, 2011, and the ALJ adequately explained his consideration of the evidence regarding this impairment as being outside the relevant time period, the Court finds the ALJ's decision is supported by substantial evidence.

**RFC/Credibility Evaluation**

Plaintiff challenges the ALJ's RFC determination because the ALJ failed to consider Plaintiff's shortness of breath a medically determinable impairment in rendering her RFC. [Doc. 35 at 11.]  Plaintiff also argues the ALJ erred by finding Plaintiff not credible for receiving "minimal and conservative treatment for her neck and back pain" when this minimal treatment was due to her lack of ability to pay for more aggressive treatment. [*Id*. at 13.]  Plaintiff also challenges the ALJ's characterization of her activities of daily living in assessing her credibility arguing that the ALJ does not explain how the performance of certain activities of daily living translates into an ability to work for a full workday. [*Id*. at 14.]

The Commissioner argues, however, that none of Plaintiff's treating physicians reported any functional limitations resulting from her symptoms or suggesting that her

symptoms affected her ability to do sustained work, and substantial evidence supports the

RFC determination.  [Doc. 36 at 6.]  The Court agrees with the Commissioner.

### ALJ Determination

The ALJ found Plaintiff's RFC to be:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b). In particular, the claimant was able to lift and carry up to 20 pounds occasionally and 10 pounds frequently. She could stand or walk for approximately 6 hours of an 8-hour workday and sit for approximately 6 hours of an 8- hour workday with normal breaks.

[R. 24.]

The ALJ explained that:

> The claimant alleges disability due to a back injury and a neck injury. However, the medical record shows little treatment for back or neck pain prior to the claimant's date last insured of September 30, 2011. The medical record shows that the claimant was seen at Calhoun Falls Family Practice in the year 2009 and 2010 for her routine medical treatment. Progress notes from November 13, 2009, June 29, 2010, July 13, 2010, August 16, 2010, and October 1, 2010 show treatment for dizziness and headache due to hypertension, a routine physical examination, and pain in the left side (Exhibit 7F, p.1-7). The claimant's hypertension was treated with medications and the claimant reported improvement in her symptoms (Exhibit 7F, p.3, 7, 11). During these evaluations, the claimant made no mention of back or neck pain (Exhibit 7F, p.1-7).
> . . .
>
> On January 4, 2011, the claimant told her physician that she had a history of disc problems in her neck years ago and had undergone a fusion. She complained that her back and neck were slowly worsening and she was having more pain in her spine (Exhibit 7F, p.11 ). A physical examination showed some reduction in extension and flexion, but the claimant had normal strength and tone and no pain with a straight leg raise. The neck was supple and there was normal neck motion. Imaging

22

studies were recommended (Exhibit 7F, p.12). X-rays of the cervical spine performed on January 6, 2011 confirmed a prior fusion at C4 to C6 with mild cervical spondylosis at the adjacent discs and cervical posterior elements (Exhibit 7F, p. 48). X-rays of the thoracic spine showed spondylosis, most significantly at the lower levels. However, the changes were considered mild (Exhibit 7F, p.48). X-rays of the lumbar spine showed moderate lumbar spondylosis, most significant at L4-5 and the lower lumbar posterior elements (Exhibit 7F, p.48, 49).

. . .

An MRI performed in March 2012, more than five months after the claimant's date last insured revealed mild degenerative findings at C3-4 with no evidence of spinal canal narrowing and mild degenerative changes at C6-7 without evidence of foraminal stenosis or spinal canal narrowing (Exhibit 2F, p. 6-7). The claimant was reporting tingling and numbness in her arms and legs as well as neck pain (Exhibit 2F, p. 4). A review of the medical record does not include any evidence that these symptoms were reported prior to September 30, 2011 the claimant's date last insured. Over the next year, the claimant received more regular treatment for her complaints of back and neck pain. However, her neurological examinations have remained unremarkable (Exhibit 7F, p.15, Exhibit 8F, p.5, and Exhibit 13F, p.7).

. . .

While the medical evidence documents that the claimant has some mild to moderate degenerative disease in her cervical, thoracic, and lumbar spine, the claimant's alleged severity of pain is not supported by the contemporaneous objective examinations and imaging studies. X-rays performed in January 2011 showed only mild changes in the cervical and thoracic spine and moderate changes in the lumbar spine (Exhibit 7F, p.48). A physical examination performed on January 4, 2011, showed some reduction in extension and flexion in the lumbar spine, but the claimant had normal strength and tone and no pain with a straight leg raise. The neck was supple and there was normal neck motion. Imaging studies were recommended (Exhibit 7F, p.12). While performed after the claimant's date last insured, an MRI of the cervical spine performed in March 2012, revealed only mild degenerative findings at C3-4 with no evidence of spinal canal narrowing and only mild degenerative changes at C6-7 with no evidence of foraminal stenosis or spinal canal narrowing (Exhibit 2F, pp. 6-7). A later nerve

23

conduction study was also benign (Exhibit 7F, p. 15). These objective and diagnostic test findings are not consistent with the alleged incapacitating impairments reported at the hearing.

The claimant received minimal and conservative treatment for her neck and back pain prior to the date last insured. While the evidence confirms a prior fusion in the cervical spine, the claimant was only seen for back and/or neck pain on three or four occasions between January 2010 and January 2012. Further, the claimant was treated with the pain medication Ultram but had no physical therapy or injections. There is no evidence any surgery has been recommended or that any emergency room visits were needed prior to the date last insured. Such moderate treatment for a condition alleged to be incapacitating serves to lessen the credibility of the claimant as to the severity of her impairments.

[R. 24–27.]

### Discussion

The Administration has provided a definition of RFC and explained what a RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. . . .

SSR 96–8p, 61 Fed.Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted). The RFC assessment must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20

24

C.F.R. 404.1545 and 416.945. *See id.* Only after this identification and assessment may

RFC be expressed in terms of the exertional levels of work: sedentary, light, medium,

heavy, and very heavy. *Id.*

Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.) Age and body habitus (i .e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the [claimant]'s medically determinable impairment(s) and related symptoms) are not factors in assessing RFC. . . .

*Id.* at 34,476. When "determining the claimant's residual functional capacity, the ALJ has

a duty to establish, by competent medical evidence, the physical and mental capacity that

the claimant can perform in a work setting, after giving appropriate consideration to all of

her impairments." *McGuire v. Astrue*, C/A No. 5:07-254, 2008 WL 4446683, at *5

(S.D.W.Va. Sept. 26, 2008) (quoting *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir.1996)).

An RFC assessment reflects an individual's "maximum remaining ability to do sustained

work activities in an ordinary work setting on a regular and continuing basis." S.S.R. 96–8p,

at *2.

The ALJ must also make a credibility determination in assessing whether Plaintiff is

disabled by pain by following a two-step process involving a finding of the credibility of the

individual's statements about symptoms. SSR 96–7p, 1996 WL 374186, at *1. First, "there

must be objective medical evidence establishing some condition that could reasonably be

expected to produce the pain alleged." *Craig v. Chater*, 76 F.3d 585, 592 (4th Cir.1996) (*citing Foster v. Heckler*, 780 F.2d 1125, 1129 (4th Cir.1986)).  Second, and only after the threshold obligation has been met, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Craig*, 76 F.3d at 595 (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)).

At the first step, "the pain claimed is not directly at issue; the focus is instead on establishing a determinable underlying impairment ... which could reasonably be expected to be the cause of the disabling pain asserted by the claimant." *Craig*, 76 F.3d at 594.  After "an ALJ concludes that an impairment could reasonably be expected to produce the pain alleged, [at the second step of the credibility inquiry] she ought to view any inconsistency or defect in the plaintiff's subjective testimony through a more discriminating lens because the plaintiff's subjective allegations . . . are consistent with the objective expectations." *Bragg v. Astrue*, C/A No. 8:06-2132-MBS, 2008 WL 348030, at *5 (D.S.C. Feb. 5, 2008).

Upon reviewing the ALJ's decision regarding Plaintiff's RFC, the Court finds the ALJ's decision is supported by substantial evidence.  While Plaintiff challenges the ALJ's consideration of her minimal treatment with respect to her neck and back, Plaintiff points to no evidence of record that she was unable to receive treatment required by her doctors due to a lack of funds.  Regardless, Plaintiff's conservative treatment was merely one reason for discounting her claims of impairment due to her neck and back pain.

The ALJ noted Plaintiff was only seen for back and/or neck pain on three or four occasions between January 2010 and January 2012.  [R. 26.]   Further, the ALJ noted Plaintiff was treated with the pain medication Ultram but had no physical therapy or injections, and there was no evidence any surgery has been recommended or that any

26

emergency room visits were needed prior to the date last insured. [*Id*.]  The ALJ concluded that such moderate treatment for a condition alleged to be incapacitating served to lessen the credibility of the Plaintiff as to the severity of her impairments. [*Id*.]  The ALJ further noted that, although Plaintiff reported symptoms of tingling and numbness in her arms and legs, as well as neck pain five months after her DLI, a review of the medical record shows that while Plaintiff received more regular treatment for her complaints of back and neck pain, her neurological examinations remained unremarkable. [R. 25.]

Furthermore, in addition to the conservative nature of her treatment, the ALJ also considered Plaintiff's activities of daily living ("ADL") in determining her RFC and credibility. In considering Plaintiff's ADL's, the ALJ found that:

> The claimant is capable of personal care, she sweeps, she can do the dishes, she goes grocery shopping with her husband who is on disability, she drives and rides in a car, she plays with her four dogs, she collects the eggs laid by her chickens daily, she watches television and she uses the computer. These activities of daily living suggest significant residual abilities and are inconsistent with an inability to stand for more than five minutes at a time as reported at the hearing.

[R. 27.]  The law is clear that, whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record.  SSR 96–7p, 61 Fed.Reg. at 34,485.  The credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.; see also*

*Hammond*, 765 F.2d at 426 (stating that the ALJ's credibility determination "must refer specifically to the evidence informing the ALJ's conclusions").

In this case, the ALJ expressly followed the two-step process outlined in *Craig v. Chater, supra*, in making findings related to the credibility of Plaintiff's statements about symptoms. [*See* R. 26–28.]   The Court notes the ALJ sufficiently explained the basis for his credibility findings.  And, other than disagreeing with the ALJ's findings, Plaintiff failed to direct the Court to any evidence the ALJ failed to consider.  In addition to considering Plaintiff's ADL, the ALJ also considered Plaintiff's testimony which focused greatly on limitations that arose since her surgery in December 2012.  [*See* R. 26–27.]  The ALJ concluded that there was simply insufficient evidence to support a finding of disability prior to Plaintiff's DLI.  [R. 27.]  And, while Plaintiff now raises the argument regarding her inability to afford more aggressive treatment, there is nothing in the record to suggest that Plaintiff's alleged lack of funds impeded her medical care in a way that supports a finding of disability.  Accordingly, the Court finds no error in the ALJ's credibility and RFC findings and declines to remand for reconsideration on this basis.

**Step 4 Ability to Perform Past Relevant Work**

Plaintiff contends that the ALJ's Step 4 finding that Plaintiff could perform her PRW as it was actually and generally performed in the national economy is unsupported by substantial evidence. [Doc. 35 at 15–16.]  Plaintiff challenges the ALJ's finding that she can perform PRW because the record indicates that Plaintiff did not meet the required level for the work to constitute substantial gainful activity ("SGA") during those years.   [*Id*.]  In other words, Plaintiff argues in essence that her prior work as a filing sorter and hauler, rowing

28

machine operator, and spooler cannot constitute PRW.  Plaintiff also claims the VE's testimony was based on an incomplete hypothetical as it did not fairly set out Plaintiff's impairments. [*Id*.]

The Commissioner argues, however, that Plaintiff incorrectly relies on the regulations' minimum earnings thresholds in arguing Plaintiff's PRW was not SGA.  [Doc. 36 at 9.] The Commissioner contends the ALJ appropriately found that Plaintiff's past jobs as a filing sorter and hauler, rowing machine operator, and spooler constituted PRW, fell within the RFC determination, and Plaintiff could perform them as actually and generally performed in the national economy. [*Id*.] The Court agrees with the Commissioner.[7]

**Discussion**

PRW is work that a claimant has done within the past fifteen years, that was SGA, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1565(b)(1). SGA is defined as work activity, even if such work is done on a part-time basis for less pay or with less responsibility than previous work, that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572.  The social security regulations specifically state that work activity can be substantial, "even if it is done on a part-time basis." 20 C.F.R. § 404.1560(b)(1).   Work is gainful when it is of a type that is "usually done for pay or profit, whether or not a profit is realized."  20 C.F.R. § 404.1572(b).  While the regulations state that "in evaluating your work activity for substantial gainful activity purposes, our primary consideration will be the earnings you derive from the work activity," the amount of earnings

---

[7]It appears that Plaintiff never contended before the ALJ that her prior jobs of filing sorter and hauler, rowing machine operator, and spooler could not be considered PRW because that work did not constitute SGA.  The Court acknowledges that it appears Plaintiff did raise this argument to the Appeals Council. [R. 1–5, 193–97.]

is not the sole deciding factor.  *See* 20 C.F.R. § 404.1574(a); *Melville v. Apfel*, 198 F.3d 45, 52–54 (2nd Cir. 1999) (discussing PRW and finding that "a proper assessment of whether past work was substantial gainful activity requires evaluation of, *inter alia*, how well the claimant performed her duties, whether those duties were minimal and made little or no demand on her, what her work was worth to the employer, and whether her income was tied to her productivity"); *Thornsberry v. Astrue*, C/A No. 4:08-4075-HMH-TER, 2010 WL 146483, at *6 (Jan. 12, 2010) (showing consideration that Plaintiff "did not quit his job due to an inability to perform" during the analysis of SGA in addition to the earnings factor).

To be eligible for disability benefits, a person must be unable to engage in SGA. According to social security regulations, a person who is earning more than a certain monthly amount (net of impairment-related work expenses) is ordinarily considered to be engaging in SGA, and the amount of monthly earnings considered as SGA depends on the nature of a person's disability. *See* Social Security, https://www.socialsecurity.gov/oact/cola/sga.html, (last visited January 21, 2016); 20 C.F.R. §§ 404.1574(a).  For work performed between January 1990 and June 1999, monthly earnings averaging more than $500.00 per month for a non-blind person "will ordinarily show" SGA under the regulatory guidelines; between July 1999 and December 2000, monthly earnings averaging more than $700.00 per month ordinarily shows SGA; and finally between 2001–2004, $740 a month ordinarily shows SGA.  20 C.F.R. § 404.1574(b)(2) (Table 1).[8]

---

[8]According to the Administration, monthly SGA amounts for non-blind individuals were $300 from 1980–1989, $500 from 1990–1998, $700 from 1999–2000, $740 in 2001, $780 in 2002, $800 in 2003, $810 in 2004, $830 in 2005, $860 in 2006, $900 in 2007, $940 in 2008, and $980 in 2009. *See* Social Security, https://www.socialsecurity.gov/

The record shows that Plaintiff worked the following jobs in the 15 years before her alleged onset date of disability (originally November 16, 2007):

| Job Title | Dates Worked | Hours/Days Per Week | Pay |
|-----------|--------------|---------------------|-----|
| Roller Operator | May 2007- November 2007 | 8 hrs/day-5 days/week | $8.50/hr |
| Final Finisher | June 2001- July 2004 | 8 hrs/day-5 days/week | $9.57/hr |
| Task Force | April 1999 - December 1999 | 8 hrs/day-5 days/week | $7.50/hr |
| Handling Fabric | October 1998 - February 1999 | 8 hrs/day-5 days/week | $5.25/hr |
| Welder | August 1996- December 1997 | 8 hrs/day-5 days/week | $9.07/hr |

[R. 152.]

A summary of Plaintiff's FICA earnings is outlined below:

| Year | Earnings | SGA Figure Month/Year | Work |
|------|----------|-----------------------|------|
| 1996 | $14,632.44 | $ 500/6000 | Welder |
| 1997 | $14,797.03 | $ 500/6000 | Welder |
| 1998 | $ 2,693.03 | $ 500/6000 | Handling Fabric (*Sorter, filer hauler*) |
| 1999 | $ 8,397.46 | $ 700/8400 | Handling Fabric/Task Force (*Spooler*) |
| 2000 | $   314.40 | $ 700/8400 | |
| 2001 | $11,640.01 | $ 740/8880 | Final Finisher |

---

oact/cola/sga.html, (last visited January 21, 2016); *see also Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir.2009) (court may "properly take judicial notice of matters of public record"). Multiplying the monthly SGA amounts by 12 yields annual SGA amounts of $3,600 for 1980–1989, $6,000 for 1990–1998, $8,400 for 1999–2000, $8,880 for 2001, $9,360 for 2002, $9,600 for 2003, $9,720 for 2004, $9,960 for 2005, $10,320 for 2006, $10,800 for 2007, $11,280 for 2008, and $11,760 for 2009.

| 2002 | $16,903.62 | $ 780/9360 | Final Finisher |
| 2003 | $16,198.54 | $ 800/9600 | Final Finisher |
| 2004 | $  8,828.99 | $ 810/9720 | Final Finisher |
| 2005 | $  3,413.09 | $ 830/9960 | |
| 2006 | $       0.00 | $ 860/10,320 | Not Working |
| 2007 | $  6,507.89 | $ 900/10,800 | Roller Operator (*Rowing machiner operator*) |
| 2008 | $       0.00 | $ 940/11, 280 | Not Working |
| 2009 | $       0.00 | $ 980/11,760 | Not Working |
| 2010 | $       0.00 | $1000/12,000 | Not Working |
| 2011 | $       0.00 | $1000/12,000 | Not Working |
| 2012 | $       0.00 | $1010/12,120 | Not Working |

[*See* R. 149.]

The Vocational Expert ("VE") identified Plaintiff's past work as a final finisher/fringe binder operator (DOT#787.682-014, medium, SVP3), a filing sorter and hauler (DOT#689.687-086, light, SVP2), a rowing machine operator (DOT#619.685-082, light, SVP2), and a spooler(DOT#689.685-014, light, SVP2). [R. 28.] The VE determined that an individual of Plaintiff's age, with her level of education, and RFC would be able to perform Plaintiff's past work as a filing sorter and hauler, rowing machine operator and spooler positions because those are all light exertional level work and fall within the RFC. [*Id*.] In comparing Plaintiff's RFC with the physical and mental demands of a filing sorter and hauler, rowing machine operator, and spooler, the ALJ found that Plaintiff was able to perform these jobs as actually and generally performed in the national economy. [*Id*.]

Plaintiff "bears the burden of establishing that prior work qualifies as an unsuccessful work attempt at the fourth stage of the applicable analysis." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1993). Although it is not clear, the Court presumes that Plaintiff may be attempting to argue that her past work as a filing sorter and hauler, rowing machine operator, and spooler were only unsuccessful work attempts that cannot constitute SGA. [Doc. 35 at 15–16.]

20 C.F.R. § 404.1574(a)(1)(4) provides:

(4)    If you worked between 3 and 6 months. We will consider work that lasted longer than 3 months to be an unsuccessful work attempt if it ended, or was reduced below substantial gainful activity earnings level, within 6 months because of your impairment or because of the removal of special conditions which took into account your impairment and permitted your to work and—

(i)    You were frequently absent from work because of your impairment;
(ii)    Your work was unsatisfactory because of your impairment;
(iii)    You worked during a period of temporary remission of your impairment; or
(iv)    You worked under special conditions that were essential to your performance and these conditions were removed.

The Court notes that Plaintiff worked for four months in 1998 as a sorter/filer/hauler but provided no reasoning for her leaving this employment and did not allege leaving due to her impairments. Further, while Plaintiff worked from April–December 1999 as a spooler, she missed making the SGA income mark by only $2.54 with no explanation of why she did not work the first four months of the year. Lastly, Plaintiff testified she left her last job in 2007 as a rowing machiner operator because she missed too many work days from being

sick and attending doctor's appointments.  [R. 40.]  She did not allege, however, that she was unable to do that job due to her impairments.

While Plaintiff is correct that her earnings do not meet SGA amounts indicating presumptive "substantial gainful activity" for the particular jobs the ALJ considered PRW, there is no evidence that Plaintiff's impairments were the deciding factor interfering with her ability to continue those jobs.  And, certainly, there is no evidence or contention that Plaintiff left her jobs of sorter/filer/hauler and spooler in 1998 and 1999 because of her impairments that became severe on November 16, 2007 (the original alleged onset date).  Thus, the ALJ was not required to consider those jobs to be unsuccessful work attempts.  Plaintiff worked those jobs in the past 15 years, the jobs lasted long enough for Plaintiff to learn to do them, and profit was realized.  *See* 20 C.F.R. § 404.1565(b)(1); 20 C.F.R. § 404.1574(c)(1)-(5).  The Court finds that substantial evidence supports the ALJ's Step 4 finding that Plaintiff's past jobs of filing sorter and hauler, rowing machine operator, and spooler constituted PRW.  And, substantial evidence supports the ALJ's finding that Plaintiff, who could perform the full range of light work, could thus perform those jobs.  Thus, the ALJ properly ended the analysis at Step 4.

In the alternative, even if the ALJ erred in stopping the analysis at Step 4, the Court recommends that the error is harmless.  With regard to Plaintiff's contention that the ALJ presented the VE with an incomplete hypothetical, the Court notes that the ALJ asked the VE to explain Plaintiff's prior work, which the VE did by listing occupations found in the DOT that Plaintiff had performed within the past 15 years. [R. 53–54.] From the hearing testimony, this Court cannot glean that the ALJ presented to the VE a question of whether a hypothetical individual of the same age, education, and RFC as Plaintiff would be able to

perform any of Plaintiff's past work. [*See id.*] Thus, the ALJ's statement that "[t]he vocational expert testified that such an individual would be able to perform the claimant's past work" appears to be an error. [R. 28.]

However, because the ALJ properly determined that Plaintiff had the RFC to perform the full range of light work and had only exertional impairments, the Fourth Circuit has held that the Medical–Vocational Guidelines ("the grids") adequately encompass a claimant's ability to perform basic work activities and VE testimony is not necessary. *See Hill v. Colvin*, No. 1:14CV134, 2015 WL 4600526, at *5 (M.D.N.C. July 29, 2015) (citing *Hammond v. Heckler*, 765 F.2d 424, 425–26 (4th Cir. 1985)). Thus, in accordance with the grids for light work, and using the ALJ's statement that Plaintiff was a 53 year old person, with tenth grade education, and could perform the full range of unskilled light work, the grids appear to direct a finding of "not disabled." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 at Table No. 2, Rule 202.10. Therefore, the ALJ's finding that Plaintiff was not disabled is supported by the grids, and testimony of a VE was not needed. Accordingly, the Court declines to remand solely for the Commissioner to make a Step 5 finding of "not disabled" when it is apparent that such a determination is required based on this record. *See Huddleston v. Astrue*, 826 F. Supp. 2d 942, 954–55 (S.D.W.Va. Nov. 23, 2011) (citing cases indicating remand is necessary only when the error results in harm to the claimant such that the Commissioner's decision might reasonably have been different).

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the Court recommends the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.

January 21, 2016                          s/Jacquelyn D. Austin
Greenville, South Carolina               United States Magistrate Judge